IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) | CV. NO. 10-00258 AWT-BMK |
| Plaintiff, | ) ) ) | FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE HEARINGS |
| vs. | ) ) ) | OFFICER'S DECISION BE REVERSED AND THE CASE BE |
| T.F., by and through his Mother, PAULINE F., | ) ) ) | REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER |
| Defendants. | ) ) ) ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION THAT THE ADMINISTRATIVE
HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE BE
<u>REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER</u>

Plaintiff Department of Education, State of Hawaii ("DOE") appeals

an Administrative Hearings Officer's ("Hearings Officer") Findings of Fact,

Conclusions of Law and Decision ("Decision") rendered pursuant to the

Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, et seq.

The Court heard the DOE's appeal on August 10, 2011.  After careful

consideration of the parties' briefs and the arguments of counsel, the Court FINDS

and RECOMMENDS that the Hearings Officer's Decision be REVERSED and the

case be REMANDED to the Hearings Officer for further findings and conclusions

consistent with the Court's ruling.

<u>BACKGROUND</u>

I.    <u>The IDEA</u>

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a free appropriate public education [("FAPE")] that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living . . . ." 20 U.S.C. § 1400(d)(1)(A).  The IDEA defines a FAPE as:

> special education and related services that--
>
> (A)    have been provided at public expense, under public supervision and direction, and without charge;
>
> (B)    meet the standards of the State educational agency;
>
> (C)    include an appropriate preschool, elementary school, or secondary school education in the State involved; and
>
> (D)    are provided in conformity with the individualized education program [("IEP")] required under section 1414(d) of this title.

<u>Id.</u> § 1401(9).  To provide a FAPE in compliance with the IDEA, a State educational agency receiving federal funds must evaluate the child, determine whether the child is eligible for special education and related services, and formulate and implement an IEP.  <u>See generally id.</u> § 1414.  An IEP is prepared by

an IEP team, which is composed of the child's parents, regular teacher, special education teacher, a representative of the local educational agency, other individuals who have knowledge or special expertise regarding the child, and where appropriate, the child.  Id. § 1414(d)(1)(B).  The IEP team must review the IEP at least annually to determine whether the child's annual goals are being achieved, and revise the IEP if appropriate.  Id. § 1414(d)(4)(A).

The FAPE to which a disabled child is entitled "does not mean the absolutely best or 'potential-maximizing' education for the individual child." Gregory K. v. Longview Sch. Dist., 811 F.2d 1307, 1314 (9th Cir. 1987) (quoting Bd. of Educ. v. Rowley, 458 U.S. 176, 197 n.21 (1982)).  Instead, the states are obligated to provide a "basic floor of opportunity" through a program individually designed to provide educational benefits to the disabled child.  Seattle Sch. Dist., No. 1 v. B.S., 82 F.3d 1493, 1500 (9th Cir. 1996) (quoting Union Sch. Dist. v. Smith, 15 F.3d 1519, 1524 (9th Cir. 1994)) (quotation marks omitted).  The basic floor, however, is more than merely "providing a program that produces some minimal academic advancement, no matter how trivial."  Amanda J. ex rel. Annette J. v. Clark Cnty. Sch. Dist., 267 F.3d 877, 890 (9th Cir. 2001) (citation omitted).

In addition to a substantive right to a FAPE, the IDEA requires states to develop certain procedures "to ensure that children with disabilities and their

parents are guaranteed procedural safeguards with respect to the provision of a [FAPE] . . . ." 20 U.S.C. § 1415(a). These procedures include, among other things, an opportunity to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a [FAPE] to such child . . . ." Id. § 1415(b)(6). When such a complaint is made, the parties involved have an opportunity to request an impartial due process hearing. Id. § 1415(f)(1)(A). An aggrieved party may thereafter appeal the decision made in the hearing to a federal district court. Id. § 1415(i)(2)(A).

II.    Factual Background

T.F. is an eight-year-old boy with autism who is eligible to receive special education and related services under the IDEA. (R. at 1074; Opening Br. at 2.) At all times relevant, T.F. attended Kaʻala Elementary School ("KES"), his home school. (See R. at 1072, 1074.) On September 16, 2009, T.F.'s IEP team met to revise his IEP. (See Opening Br. at 3; Answering Br. at 8.) The resulting IEP provided for T.F. to receive 540 minutes per quarter of speech/language therapy; 1825 minutes per week of special education; 135 minutes per quarter of occupational therapy services; extended school year services; and supplementary aids and services, program modifications, and supports for school personnel.

(Resp't's Ex. 2 at 21.)

In September 2009, the Hawaii State Board of Education and the state teachers union, the Hawaii State Teachers' Association ("HSTA"), entered into a retroactive contract, which required seventeen furlough days to be taken from instructional time during the 2009-2010 school year. (See R. at 1075.) The elimination of these seventeen days from the school calendar constituted an approximately ten percent reduction in instructional days. (See Answering Br. at 12.) The contract was reached in an effort to balance the state budget. (R. at 1075; Opening Br. at 3-4.) The first furlough day was scheduled for October 23, 2009. (See Opening Br. at 4; Answering Br. at 12.)

On October 20, 2009, T.F., by and through his mother, Pauline F. ("Mother") (collectively "Defendants") sent a letter to KES, which was construed as a request for an impartial due process hearing. (See R. at 2-3.) In the letter, Defendants stated, in pertinent part:

> [T.F.'s] IEP requires that he receive his education in a structured setting, including 1825 minutes per week of special education and 1925 minutes per week with a 1:1 aide. Additionally, [T.F.'s] program requires he receive 90 minutes afterschool instruction in the classroom on Mondays, Wednesdays and Fridays. The furlough days will have a direct impact on these services. [T.F.'s] IEP requires that he receive education and related services in an educational environment in order to receive an educational benefit. 20 U.S.C. § 1412(a)(5); 34 C.F.R. § 300.114(a)(2). Additionally, [T.F.'s] IEP requires

implementation in such a setting and includes opportunities for mainstreaming and inclusion with non-disabled peers in general education, at breakfast, lunch and during recess.

[T.F.'s] IEP was created with the understanding that it would be implemented during a five-day school week. The proposed "furlough Friday" plan is a unilateral modification of [T.F.'s] IEP and presents a fundamental change in his program and placement. [Defendants] do not agree to such a change. This suspension of [T.F.'s] education will result in a loss of educational opportunity, . . . and will deny [T.F.] a [FAPE].

[Defendants] request a[n] . . . impartial hearing concerning [T.F.'s] educational program and related services. They invoke the protections of "stay-put" pursuant to 20 U.S.C. § 1415(j), until the hearing is concluded, including all appeals. As the IEP requires that [T.F.] receive his program in classroom setting 1825 hours per week, during a five-day week, please confirm . . . that an appropriately staffed and populated educational classroom, will be available on Friday October 23, 2009, for [T.F.'s] program.

(Id. at 2 (emphasis omitted).)

On October 20, 2009, T.F. and eight other disabled students who were enrolled in public schools (collectively "students"), through their parents acting as guardians ad litem, filed a complaint in this Court in a separate case against the DOE. See N.D. v. Hawaii, Civ. No. 09-00505 DAE-BMK, 2009 WL 3415312 (D. Haw. Oct. 22, 2009). The students alleged that the furloughs violated their rights under the IDEA. See N.D. v. Hawaii Dep't of Educ., 600 F.3d 1104, 1108 (9th Cir. 2010). Specifically, the students alleged that the furloughs constituted a

change in their educational placement in contravention of the IDEA's stay-put

provision.  See id.  This provision mandates that the child remain in his or her

"then-current educational placement" during the pendency of the proceedings.  See

20 U.S.C. § 1415(j).  The students also moved for a temporary injunction of the

furloughs.  See N.D., 2009 WL 3415312, at *1.

On October 22, 2009, District Judge David Alan Ezra denied the

students' motion for a temporary injunction.  Id.  The case was later assigned to

Senior Circuit Judge A. Wallace Tashima..  See N.D., 600 F.3d at 1108 n.2.  On

November 9, 2009, Judge Tashima held a hearing on whether a preliminary

injunction should be issued.  Id. at 1108 & n.2.  At the hearing, Judge Tashima

denied the students' motion for a preliminary injunction on the basis that the

students were unlikely to succeed on the merits.  (Hr'g Tr. 90:8-13, Nov. 9, 2009.)

Judge Tashima concluded that the furloughs did not constitute a change in the

students' "educational placement," such that the stay-put provision applies.  (See

id. at 92:1-23.)  In a minute order dated November 13, 2009, Judge Tashima noted

that for the reasons stated on the record in Court at the hearing on the motion for a

preliminary injunction, the motion was denied.  (Opening Br. at 8.)  The students

appealed.  N.D., 600 F.3d at 1109.

On April 5, 2010, the Ninth Circuit affirmed Judge Tashima's ruling.

Id. at 1117. In its order, the Ninth Circuit agreed with Judge Tashima that the case turned on the students' likelihood of success on the merits. Id. at 1113. The Ninth Circuit noted, "The heart of the case is whether the furloughs are a change in the educational placement of the disabled children such that the stay-put provisions apply." Id. The Ninth Circuit noted, "[T]he difficulty in determining whether there has been a change lies with the lack of a definition of 'current educational placement' within the IDEA." Id. at 1114 (quoting L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 902 (9th Cir. 2009)). Based on Supreme Court case law, Congress's expressed intent in the statute, the agency's implementation of the statute, and other Circuits' decisions, the Ninth Circuit held that "'educational placement' means the general educational program of the student." Id. at 1116. The Ninth Circuit stated, "More specifically we conclude that under the IDEA a change in educational placement relates to whether the student is moved from one type of program--i.e., regular class--to another type--i.e., home instruction." Id. The Ninth Circuit further stated, "A change in the educational placement can also result when there is a significant change in the student's program even if the student remains in the same setting." Id. The Ninth Circuit stated, "This determination is made in light of Congress's intent to prevent the singling out of disabled children and to 'mainstream' them with non-disabled children." Id.

Following this definition, the Ninth Circuit held:

> Hawaii's teacher furloughs and concurrent shut down of public schools is not a change in the educational placement of disabled children. . . . [T]he children here stay in the same classification, same school district, and same educational program. The children have not been reclassified with different handicaps. The children continue to attend the same school, have the same teachers, and stay in the same classes. The educational setting of the disabled children remains the same post-furloughs.

Id. The Ninth Circuit held, "[T]he stay-put provision of the IDEA was not intended to cover system-wide changes in public schools that affect disabled and non-disabled children alike, and . . . such system-wide changes are not changes in educational placement." Id. at 1108.

The Ninth Circuit, however, noted that this does not "leave the parents of disabled children with no means of redress." Id. at 1117. The Ninth Circuit noted:

> [The students'] claim is more properly characterized as a "material failure to implement the IEP." Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 822 (9th Cir. 2007). A school district's failure to provide the number of minutes and type of instruction guaranteed in an IEP could support a claim of material failure to implement an IEP. The agency is required to address such a claim with a due process hearing, and full judicial review is available. However, a material failure claim does not trigger the stay-put provisions. See 20 U.S.C. § 1415(j) (2006).

Id.

On November 2, 2009, a resolution session was held for T.F. (R. at 1076.) At the resolution session, the DOE offered Defendants three options for T.F. on furlough days: (1) T.F. could spend 7 hours with a 1:1 paraprofessional at a private day camp, after which a he would receive 90 minutes of his Applied Behavior Analysis ("ABA") program at home from a 1:1 paraprofessional; (2) T.F. could receive 90 minutes of his ABA program at home from a 1:1 paraprofessional; or (3) T.F. could receive 7 hours of his ABA program at home from a 1:1 paraprofessional. (Id.) Defendants agreed to the first option--7 hours with a 1:1 paraprofessional at a private day camp followed by 90 minutes of his ABA program from a 1:1 paraprofessional at home. (See id. at 1077; Answering Br. at 13.)

III.    Procedural Background

A hearing on Defendants' request for an impartial due process hearing was held before the Hearings Officer on March 10 and 11, 2010. (R. at 1074.) On April 3, 2010, the Hearings Officer issued her Decision. (Id. at 1072-85.) In her Decision, the Hearings Officer identified the issue as, "Whether [the DOE] unilaterally changed [T.F.'s] educational program and placement by proposing and implementing a program other than the September 16, 2009 [IEP] on furlough days and denied him a [FAPE]." (Id. at 1074.)

10

The Hearings Officer concluded, "The Hearings Officer finds by a preponderance of the evidence that [the DOE] procedurally and substantively denied [T.F.] a FAPE when it unilaterally changed [his] educational program in response to the institution of furlough days." (Id. at 1082.) Specifically, the Hearings Officer concluded, "[T.F.] was procedurally denied a FAPE when a unilateral change was made to his program without [the] benefit of his IEP team, including Mother. As such, Mother's opportunity to participate in the decision-making process regarding the provision of a FAPE to [T.F.] was significantly impeded." (Id.) The Hearings Officer further concluded, "[T.F.] was also substantively denied a FAPE because the unilateral change to [his] educational program was not reasonably calculated to enable him to receive educational benefit[s]." (Id.) The Hearings Officer noted, "On furlough days, [T.F.] cannot work on academic IEP goals and objectives and is not provided with the structured setting he requires to make progress and receive educational benefits. The program provided to [T.F.] on furlough days has caused him to lose educational opportunities." (Id. at 1082-83.) Lastly, in a footnote, the Hearings Officer stated, "As the Hearings Officer finds that [T.F.] was denied a FAPE, she need not address the second issue of whether [the DOE] unilaterally changed [T.F.'s] placement." (Id. at 1083.)

As to the remedy, the Hearings Officer noted that Defendants requested that T.F. "receive the 1825 minutes per week of special education in his educational program in a structured classroom setting." (Id.) The Hearings Officer noted, "During furlough weeks, [T.F.] receives fewer than 1825 minutes of special education services as contemplated by the [IEP]." (Id.) The Hearings Officer noted that there were thirteen furlough days between October 23, 2009 and April 3, 2010, and "[o]n each of those days, [T.F.] [did] not receive[ ] his educational program pursuant to [his IEP]." (Id.) The Hearings Officer stated:

> The Hearings Officer lacks the authority to order [KES] to reconvene on furlough days so that [T.F.'s] [IEP] may be implemented. [Defendants] are requesting that [T.F.] be provided with the number of special education minutes as contemplated in the [IEP], which [he] had been receiving prior to the first furlough day, and [he] has not received since the institution of furlough days and the unilateral change to [his] educational program.

(Id.) The Hearings Officer thus concluded that Defendants were entitled to compensatory education "because [the DOE] unilaterally changed [T.F.'s] educational program and [T.F.] was procedurally and substantively denied a FAPE." (Id. at 1083-84.)

On May 3, 2010, the DOE filed its complaint in the instant action, appealing the Hearings Officer's Decision. (Doc. # 1.) On May 18, 2011, the DOE filed its opening brief, in which it stated that it appeals the Hearings Officer's

Decision on four grounds.  (Doc. # 45.)  The DOE asserts that the Hearings Officer

erred when she:  (1) concluded that the DOE "unilaterally changed [T.F.'s]

educational program in response to the institution of furlough days[;]" (2) failed to

apply the standard announced in <u>Van Duyn</u>; (3) failed to consider the evidence

presented by the DOE in reaching her Decision; and (4) awarded Defendants

compensatory education.  (Opening Br. at 19-37.)  Defendants filed their

answering brief on June 27, 2011.  (Doc. # 49.)  The Court held a hearing on the

matter on August 10, 2011.  (Doc. # 54.)

## STANDARD OF REVIEW

"[J]udicial review in IDEA cases differs substantially from judicial

review of other agency actions, in which courts generally are confined to the

administrative record and are held to a highly deferential standard of review."  <u>Ojai</u>

<u>Unified Sch. Dist. v. Jackson</u>, 4 F.3d 1467, 1471 (9th Cir. 1993).  In an action

challenging an administrative decision under the IDEA, the district court "(i) shall

receive the records of the administrative proceedings; (ii) shall hear additional

evidence at the request of a party; and (iii) basing its decision on the preponderance

of the evidence, shall grant such relief as the court determines is appropriate."

20 U.S.C. § 1415(i)(2)(C).

However, "the provision that a reviewing court base its decision on

the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." <u>Rowley</u>, 458 U.S. at 206. Rather, "courts must give due weight to judgments of education policy." <u>Cnty. of San Diego v. Cal. Special Educ. Hearing Office</u>, 93 F.3d 1458, 1466 (9th Cir. 1996) (quoting <u>Ojai Unified Sch. Dist.</u>, 4 F.3d at 1472) (quotation marks and brackets omitted). The court, "in recognition of the expertise of the administrative agency, must consider the findings carefully and endeavor to respond to the hearing officer's resolution of each material issue." <u>Id.</u> (quoting <u>Ojai Unified Sch. Dist.</u>, 4 F.3d at 1474) (quotation marks omitted). "After such consideration, the court is free to accept or reject the findings in part or in whole." <u>Id.</u> (quoting <u>Ojai Unified Sch. Dist.</u>, 4 F.3d at 1474) (quotation marks omitted). Deference to a hearing officer's findings are warranted where the findings are "thorough and careful." <u>See</u> <u>J.L. v. Mercer Island Sch. Dist.</u>, 592 F.3d 938, 949 (9th Cir. 2010) (citation omitted); <u>Capistrano Unified Sch. Dist. v. Wartenberg</u>, 59 F.3d 884, 891 (9th Cir. 1995) (citation omitted). The party challenging the administrative decision in district court bears the burden of proof. <u>See</u> <u>B.S.</u>, 82 F.3d at 1498 (citation omitted).

<u>DISCUSSION</u>

As noted above, the DOE raises four arguments on appeal. (<u>See</u>

Opening Br. at 19-37.)  As to its first argument, the DOE asserts that the Hearings

Officer erred when she concluded that the DOE "unilaterally changed [T.F.'s]

educational program in response to the institution of furlough days."  (Id. at 20.)

The DOE argues that the Hearings Officer erroneously conflated "educational

placement" with the services set forth in the IEP.  (See id. at 25.)  The DOE argues

that although "the IEP is relevant to identifying the educational placement, the two

concepts are not identical."  (Id.)  Specifically, the DOE argues, "The IEP

identifies the placement (i.e., self-contained special education classroom, etc.), but

the IEP itself is not the placement."  (Id. at 25-26 (emphases omitted).)  The DOE

argues that the Ninth Circuit has already ruled that the furloughs do not constitute a

change in the "educational placement" of disabled children in violation of the stay-

put provision.  (Id. at 20-21.)  To this end, the DOE cites the Ninth Circuit's

decision in N.D.  (Id.)

        Defendants argue that the Hearings Officer did not rule that there was

a unilateral change in T.F.'s "placement."  (Answering Br. at 35.)  Defendants note

that instead, the Hearings Officer ruled that the DOE "changed [T.F.'s] *program*

by not implementing his IEP on furlough days in a manner that deprived him of a

FAPE . . . ."  (Id. (emphasis in original).)  Defendants argue that they thus

"prevailed in proving [that the] DOE failed to *implement* the IEP; the Hearings

Officer did not rule that the failure constituted a material change in ***educational placement***, notwithstanding [their] argument[ ] that it did." (Id. (emphases added).) Defendants note that the Hearings Officer specifically stated in a footnote, "As the Hearings Officer finds that [T.F.] was denied a FAPE, she need not address the second issue of whether [the DOE] unilaterally changed [T.F.'s] ***placement***." (Id. (quoting R. at 1083) (emphasis added, quotation marks omitted).) Defendants also argue that the Ninth Circuit's decision in N.D. is not binding in this case because that decision was on a motion for a preliminary injunction. (Id. at 4-5.) Defendants argue that the decision therefore addressed the students' likelihood of success on the merits, and not the merits themselves. (Id.)

The DOE does not appear to object to the argument that the Hearings Officer's Decision was based on a failure to implement T.F.'s IEP. (See Opening Br. at 31-34.) Rather, in its second argument, the DOE contends that the Hearings Officer erred by failing to apply the standard announced in Van Duyn when assessing whether there was an IEP implementation failure. (Id.) The DOE argues that under Van Duyn, only a "material" failure to implement an IEP violates the IDEA. (Id.)

The Court notes that there appears to be confusion as to whether the Hearings Officer's conclusions are based on a violation of the stay-put provision or

a failure to implement the IEP.  The Court, however, notes that the Hearings

Officer stated in a footnote, "As the Hearings Officer finds that [T.F.] was denied a

FAPE, she need not address the second issue of whether [the DOE] unilaterally

changed [T.F.'s] ***placement***."  (R. at 1083 (emphasis added).)  It thus seems that

the Hearings Officer's conclusions were ***not*** based on a violation of the stay-put

provision, as she would have had to address whether there was a change in T.F.'s

educational placement.  Nevertheless, the Court concludes that even if the Hearings

Officer's conclusions were based on a failure to implement the IEP, she did not

apply the correct standard.

It is well-established that not every failure to provide services

according to a student's IEP amounts to an IDEA violation.  The standard for

assessing whether there was a failure to implement an IEP in violation of the IDEA

was announced in <u>Van Duyn</u>.  <u>See</u> <u>Shaun M. ex rel. Kookie W. v. Hamamoto</u>, Civ.

No. 09-00075 DAE-BMK, 2009 WL 3415308, at *6 (D. Haw. Oct. 22, 2009).  In

<u>Van Duyn</u>, the Ninth Circuit noted that there is a distinction between cases that

complain about the content or formulation of an IEP, versus those that complain

about its implementation.  <u>See</u> 502 F.3d at 818, 820-21.  As to the former, the

Ninth Circuit noted that <u>Rowley</u> remained the governing law.  <u>See</u> <u>id.</u> at 818, 821.

As to the latter, the Ninth Circuit announced a new standard:  "a ***material*** failure to

implement an IEP violates the IDEA." Id. at 822 (emphasis in original). The

Ninth Circuit explained that a "material failure occurs when there is more than a

minor discrepancy between the services a school provides to a disabled child and

the services required by the child's IEP." Id. The Ninth Circuit noted that "the

materiality standard does not require that the child suffer demonstrable educational

harm in order to prevail." Id. The Ninth Circuit, however, noted that "the child's

educational progress, or lack of it, may be probative of whether there has been

more than a minor shortfall in the services provided." Id.

In this case, there is no indication that the Hearings Officer applied the

Van Duyn materiality standard in reaching her conclusions. Rather, the Hearings

Officer focused on Rowley and other case law. (See R. at 1080-81.) Furthermore,

the Hearings Officer characterized the IDEA violations in this case as being

procedural and substantive, when the Ninth Circuit indicated that IEP

implementation failures are neither. See Van Duyn, 502 F.3d at 818-19. Based on

the foregoing, the Court concludes that the Hearings Officer erred by failing to

apply the correct standard when she determined that there was a failure to

implement T.F.'s IEP in violation of the IDEA. The Court therefore

RECOMMENDS that the Hearings Officer's Decision be REVERSED on this

ground. The Court further RECOMMENDS that the case be REMANDED to the

Hearings Officer for further findings and conclusions as to this issue. The Court

believes that the Hearings Officer is a better position to assess whether the

reduction of school days and the options offered by the DOE for those days

amounted to a material failure to implement T.F.'s IEP under Van Duyn.

       Given the Court's recommendation, the Court concludes that it does

not need to rule on the DOE's remaining arguments. The Court, however, notes

that had the Hearings Officer's Decision been based on a violation of the stay-put

provision, the Hearings Officer would have erred for the reasons discussed in N.D.

Title 20 U.S.C. § 1415(j) provides, "[D]uring the pendency of any proceedings

conducted pursuant to this section, unless the State or local educational agency and

the parents otherwise agree, the child shall remain in [his] then-current educational

placement . . . ." See also 34 C.F.R. § 300.518(a). A parent can request a due

process hearing and invoke the stay-put provision when the State proposes to

change the child's educational placement. 34 C.F.R. §§ 300.503(a), 300.507(a).

       In N.D., 600 F.3d at 1114, the Ninth Circuit noted, "[T]he difficulty in

determining whether there has been a change lies with the lack of a definition of

'current educational placement' within the IDEA." After reviewing the relevant

Supreme Court case law, Congress's expressed intent in the statute, the agency's

implementation of the statute, and other Circuits' decisions, the Ninth Circuit

concluded that "'educational placement' means the general educational program of

the student." Id. at 1116.  The Ninth Circuit stated:

> More specifically we conclude that under the IDEA a change in
> educational placement relates to whether the student is moved
> from one type of program--i.e., regular class--to another type--
> i.e., home instruction.  A change in the educational placement
> can also result when there is a significant change in the
> student's program even if the student remains in the same
> setting.  This determination is made in light of Congress's intent
> to prevent the singling out of disabled children and to
> "mainstream" them with non-disabled children.

Id.  Following this definition, the Ninth Circuit held:

> Hawaii's teacher furloughs and concurrent shut down of public
> schools is not a change in the educational placement of disabled
> children. . . . [T]he children here stay in the same classification,
> same school district, and same educational program.  The
> children have not been reclassified with different handicaps.
> The children continue to attend the same school, have the same
> teachers, and stay in the same classes.  The educational setting
> of the disabled children remains the same post-furloughs.

Id.  The Ninth Circuit held, "[T]he stay-put provision of the IDEA was not

intended to cover system-wide changes in public schools that affect disabled and

non-disabled children alike, and . . . such system-wide changes are not changes in

educational placement."  Id. at 1108.

Although the Court agrees with Defendants that N.D. was a decision

on a motion for a preliminary injunction and not a decision on the merits, see

Johnson v. Cal. State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995)

(citation omitted); see also Sports Form, Inc. v. United Press Int'l, Inc.,

686 F.2d 750, 753 (9th Cir. 1982), the Court agrees with the Ninth Circuit's

analysis and the conclusions the Ninth Circuit reached as a result thereof.  As such,

the Court concludes that the furloughs did not constitute a change in T.F.'s

educational placement as his educational setting remained the same post-furloughs.

CONCLUSION

Based on the foregoing, the Court RECOMMENDS that the Hearings

Officer's Decision be REVERSED.  The Court further RECOMMENDS that the

case be REMANDED to the Hearings Officer for findings and conclusions on the

issue of whether there was a material failure to implement T.F.'s IEP.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, August 30, 2011.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Department of Education, State of Hawaii v. T.F., by and through his Mother, Pauline F.;
Civ. No. 10-00258 AWT-BMK; FINDINGS AND RECOMMENDATION THAT THE
ADMINISTRATIVE HEARINGS OFFICER'S DECISION BE REVERSED AND THE CASE
BE REMANDED TO THE ADMINISTRATIVE HEARINGS OFFICER.